*717 OPINION OF THE COURT
Alfred H. Kleiman, J.
Defendant moved under CPL 210.20 to dismiss two indictments, arguing that he had been denied his statutory right to a speedy trial on narcotics charges under the first indictment and that the second, for bail jumping, was barred by the five-year Statute of Limitations. Pursuant to CPL 210.45 (6), a lengthy consolidated hearing was held before me. This opinion is addressed to the following relatively novel issues raised during the hearing: Is a defendant, who absconded on the eve of trial, presumed, as a matter of law, to have attempted “to avoid apprehension or prosecution” even though he resumed his previous life-style and simply awaited rearrest? Is a defendant who is a resident of New Jersey but regularly attends to an illegal gambling operation in New York “continuously outside the state” so as to toll the New York Statute of Limitations? And who bears the burden of proof at pretrial hearings to determine such issues?
STATEMENT OF FACTS
Defendant Joseph Yanez, along with several others, was indicted for various narcotics crimes, including an A-l felony charge, on July 1, 1977. He voluntarily surrendered and was arraigned on July 27,1977. After several hearings and adjournments, the case appeared on the calendar for April 4, 1978. On that date there was discussion of moving defendant’s case to trial but no definitive announcement appeared on the record that the People were ready for trial. The case was calendared on April 11,18, and 20,1978, on which dates plea negotiations took place. Defendant Yanez did not appear on April 18 and when he was again absent on April 20, a warrant was issued but forfeiture of bail was stayed. Mr. Yanez again failed to appear on April 26, the next adjourned date, and after his attorney stated that his whereabouts were not known to him, defendant’s $10,000 cash bail was forfeited. Police did not locate defendant until May 31, 1983, when, as a result of an anonymous telephone tip, he was arrested in Fort Lee, New Jersey. He was returned on the outstanding warrant to the Supreme Court, New York County, on June 21,1983. The District Attorney filed an indictment for bail jumping in the first degree on May 10, 1984.
THE SPEEDY TRIAL MOTION
CPL 30.30 (4) (c) provides that “the period of delay resulting from the absence or unavailability of the defendant” must be *718 excluded in computing the time within which the People must be ready for trial. The section further states “A defendant must be considered absent whenever his location is unknown and he is attempting to avoid apprehension or prosecution, or his location cannot be determined by due diligence” (CPL 30.30 [4] [c]; emphasis added). The defendant readily conceded that throughout the period in question, his location was unknown within the meaning of CPL 30.30 (4) (c). The initial issue considered by this court was therefore whether defendant was “attempting to avoid apprehension or prosecution”. At the outset, I note that defendant raises no issue with respect to time before he absconded or after his rearrest; defendant’s contentions are based solely on the approximately six-year period during which he was at large.
Defendant argued that the People must bear the ultimate burden of demonstrating that defendant was “attempting to avoid apprehension or prosecution” relying on People v O’Neal (99 AD2d 844 [2d Dept 1984]). (See also, People v Fuggazzatto, 96 AD2d 538 [2d Dept 1983]; People v Rivera, 72 AD2d 922 [4th Dept 1979].)
The O’Neal court (supra, p 845) wrote: “Where a defendant moves to dismiss an indictment on speedy trial grounds, he bears the burden of proving by a preponderance of the evidence that he was deprived of his right to a speedy trial (CPL 210.45, subd 7).” But the court went on to say: “Once a defendant has shown the existence of a delay greater than six months, the prosecution assumes the burden of demonstrating that the time periods in question are excludable”, citing People v Brothers (50 NY2d 413 [1980]) and People v Berkowitz (50 NY2d 333 [1980]) (People v O’Neal, supra, at p 845).
I respectfully suggest that the O’Neal court (supra), which reviewed an appeal from the lower court’s granting of the defendant’s motion to dismiss following a hearing, incorrectly cited the aforementioned Court of Appeals cases as supporting the latter point of law. In both Brothers and Berkowitz (supra), the Court of Appeals reviewed cases in which the lower court summarily disposed of motions to dismiss without a hearing, pursuant to CPL 210.45 (4) or (5). In Brothers, the prosecutor submitted no papers in opposition to defendant’s motion to dismiss and accordingly that court held it was error to deny defendant’s motion. In Berkowitz (supra, at p 349), the court held “the People did not provide conclusive proof of sufficient excludable periods” in their answering papers and therefore remitted the case to the Supreme Court for a hearing. In People v Gruden (42 NY2d 214, 217 [1977], cited in People v Berkowitz, at p 349), *719 the court held that “the court may summarily grant a motion to dismiss unless the papers submitted by the prosecutor show that there is a factual dispute which must be resolved at a hearing.” In Gruden, the court went on to state that the prosecutor’s opposition papers need not even be as detailed as they would have to be to defeat a motion for summary judgment (supra, at pp 217, 218).
In the aforementioned cases the Court of Appeals addressed itself solely to the burden of the prosecutor in opposing defense motions for summary dismissal of indictments, set forth in CPL 210.45 (4) and (5), as distinct from the burden of the defendant upon a hearing. On the other hand CPL 210.45 (7) specifically provides that “[u]pan such a hearing, the defendant has the burden of proving by a preponderance of the evidence every fact essential to support the motion” (emphasis added). O’Neal (supra) to the contrary, it was never the intent of our Court of Appeals to modify by judicial fiat this statutory rule. (Cf. People v Del Valle, 63 AD2d 830 [4th Dept 1978]; People v Burrows, 53 AD2d 1038 [4th Dept 1976].)
The defendant readily conceded that he willfully absconded in April 1978 by jumping bail, that he knew he would be remanded if he surrendered and that he therefore elected not to surrender. To the extent the People may have any burden of going forward at the hearing, the aforementioned facts were sufficient to give rise to a presumption that defendant was in fact attempting to avoid apprehension or prosecution. It thus became defendant’s burden to prove by a preponderance of the evidence that he was not in fact avoiding apprehension or prosecution.
The defendant sought to carry his burden by showing that he in fact did not attempt to avoid apprehension since he merely resumed his former life-style and awaited rearrest. Even were I to have found that the evidence established that he merely resumed his previous life-style and openly awaited the authorities, his position would still be untenable as several New York cases demonstrate. In People v Patterson (38 NY2d 623 [1976]), the Court of Appeals upheld a finding that the defendant attempted to avoid prosecution within the meaning of CPL 30.30 (4) (c) by failing to appear on an adjourned date, which resulted in the issuance of a bench warrant. Defendant apparently took no steps, other than failing to appear, to evade the authorities; he admitted that he simply waited for the police to come and get him but “ ‘they never came’ ” (p 625). In fact defendant worked openly in a parking lot in close proximity to the Monroe County Jail throughout the period in question.
*720 In People v Morton (22 NY2d 674 [1968]), the Court of Appeals adopted the dissenting opinion filed in the Appellate Division concerning a defendant who skipped a court date, then moved out of the county but otherwise continued a normal, open lifestyle. The dissenters, with whom the Court of Appeals agreed, argued that the statutory guarantee of a speedy trial may not be invoked when defendant complains only of a “right to be promptly taken into custody, against his will.” (People v Morton, 28 AD2d 913, 914 [2d Dept 1968].) The adopted opinion pointed out that such a right “would have been immediately accorded him at any time if he had disclosed his whereabouts to the police”; by failing to do so, he effectively waived his right to a speedy trial. (Supra, p 914.)
In People v Cohen (66 AD2d 901 [2d Dept 1978]) the court held that because defendant failed to report as scheduled to a narcotics rehabilitation center for testing and then did not appear for sentencing on charges to which he had pleaded guilty, “[t]he inference is inescapable that, in the intervening period, defendant was ‘attempting to avoid apprehension’ ”, And in People v Miller (61 AD2d 1036 [2d Dept 1978]), the court found defendant had “avoided judicial process” based on the fact that he absconded after arraignment and on the inference that he was aware of his indictment since he lived with a codefendant who was indicted after a hearing defendant avoided.
The court in People v Tower (18 AD2d 284, 287 [4th Dept 1963]) held that a “defendant who successfully evades arrest for a prolonged period cannot take advantage of the resulting delay in prosecution as a ground for dismissal of the criminal charge.” The Tower majority found defendant did “evade apprehension” during the period in question even though he lived with his mother at an address known to the police, worked openly at two legitimate jobs, got married and published his notice of application for a marriage license in local newspapers, was convicted of a traffic infraction in a nearby town and placed on probation.
This case is not nearly so close. There is ample evidence that defendant consciously sought to avoid apprehension. First, defendant changed his residence to New Jersey shortly after he absconded. Defendant’s own witnesses established that defendant engaged in an illegal gambling operation throughout the period, hidden in the backrooms of legitimate businesses, often behind locked doors. And, for a short time near the end of the period in question, defendant grew a beard and adopted an alias; he insisted he was a Henry Lopez for some time after his arrest. The previous life-style to which defendant returned was there *721 fore one of illegal activity and evading the police anyway. Moreover, the testimony before me showed that defendant’s family, employees and associates all misled the police in their efforts to track down defendant.
Upon review of all the evidence this court concluded that defendant failed to overcome the presumption that he attempted to avoid apprehension and prosecution. As was stated in People v Tower (supra, p 287) “If the defendant had desired to have a speedy disposition of the charge against him, he could have had it at any time by disclosing his whereabouts to the police.”
For these reasons it was the finding of this court that defendant sought to avoid apprehension and prosecution from the day he absconded until his rearrest. This court therefore found it unnecessary to reach the issue of due diligence or the issue, raised belatedly, of the People’s readiness for trial in 1978.
Accordingly, the motion to dismiss the indictment on the narcotic charges was denied.
THE BAIL JUMPING MOTION
At issue in this branch of the hearing were the tolling provisions of the Statute of Limitations found in CPL 30.10 (4) (a) which state that periods during which a defendant was “continuously outside this state” or his whereabouts “were continuously unknown and continuously unascertainable by the exercise of reasonable diligence” must be excluded from the limitation calculation.
At the outset, the court was again confronted with a burden of proof issue: Who bears what burden to show that the statute was tolled? The defendant argued that the People must prove, beyond a reasonable doubt, that the statute was tolled. Support for this proposition would seem to come from a number of cases, most importantly from People v Kohut (30 NY2d 183 [1972]). There the court stated “[o]n any view, the prosecution has the burden of persuasion beyond a reasonable doubt in establishing that the limitation has been tolled” (supra, at p 191). Similar statements appear in People v Hines (284 NY 93,113 [1940]) and People v Brown (238 App Div 155, 157 [1st Dept 1933]).
Each of these cases was, however, decided under procedural rules predating the current CPL. Specifically, Kohufs explicit statement concerning the burden of proof cannot be read outside the context of the court’s holding that since the limitations defense bar could be raised only at trial, not by pretrial motion, it must be proven beyond a reasonable doubt by the People. Although Kohut was decided in 1972, two years after the effec *722 tive date of the new CPL, the case was decided under the former Code of Criminal Procedure which did not provide for pretrial motions on the issue of time bar. In the absence of such a mechanism, Kohut held that the issue of limitations could not be raised in a pretrial motion attacking the sufficiency of an indictment. At one point, however, the court noted, “If the issue were not now resolved, the new Criminal Procedure Law might allow a pretrial motion by defendant to raise the same point” (supra, p 192).
Indeed, CPL 210.20 (1) (f) provides for a pretrial motion to dismiss an indictment on the issue of timeliness and CPL 210.45 (6) provides for a pretrial hearing on the issue if questions of fact arise. As to the burden of proof at such a hearing, CPL 210.45 (7) , discussed above, states unequivocally that defendant must prove by a preponderance of the evidence every fact essential to support the motion.
In any event, to place a “beyond a reasonable doubt” burden on the People would be unduly harsh in light of the requirements of the tolling provisions themselves. It would be inappropriate, for example, to allow defendant merely to show that more than five years had elapsed between the commission of the crime and the commencement of the criminal action, then rest, leaving the People to show beyond a reasonable doubt that defendant “was continuously outside the state.”
Mr. Yanez jumped bail on April 26, 1977; the People did not file the indictment until May 10, 1984. At the hearing, to the extent the People were required to go forward, evidence established that defendant was a resident of New Jersey for almost all of the period in question. Indeed, defendant conceded this fact.
I hold that the concession of nonresidency establishes a presumption that defendant was continuously outside the State. The Court of Appeals recognized such a presumption under the similar tolling provisions of CPLR 207 in Childs v Brandon (60 NY2d 927, 929 [1983]): “A defendant who concedes nonresidency in New York is presumed to have been absent from the State and, therefore, is required to prove his or her presence here in order to avoid New York’s tolling statute (CPLR 207) and obtain the protection of New York’s Statutes of Limitation (Beresovski v Warszawski, 28 NY2d 419, 422, 425-426 [1971]).” While this court is aware of certain differences between Statutes of Limitation in civil law as opposed to criminal law (see, People v Hines, supra, at p 113; People v Guariglia, 187 Misc 843, 848 [County Ct, Kings County 1946], affd 272 App Div 784 [2d Dept 1947]) there is no logical reason why the same presumption of absence *723 found in Childs should not arise on similar facts in a criminal case. After all, the facts needed to prove that a defendant was “continuously outside” New York State are, for obvious reasons, usually within the peculiar knowledge of the defendant.
Defendant Yanez contended that, because he was regularly in New York during the period in question attending to an illegal gambling operation, the statute was not tolled. Indeed, defendant introduced evidence at the hearing that he traveled from New Jersey to New York on most weekdays and may even have spent one or two nights a week in New York with a girlfriend. Normally, regular appearance in New York on business by a nonresident would preclude tolling the limitation period. Although there are apparently no cases under CPL 30.10 precisely on point, a long line of cases under the CPLR counterpart holds as much and the reasoning should apply equally to criminal cases. (See, Mack v Mendels, 249 NY 356 [1928]; cf. Alex v Grande, 29 AD2d 616 [3d Dept 1967].) A defendant regularly and openly in New York attending work or business is available for legal process and it is reasonable to expect the police to find him to effectuate arrests or serve warrants.
But such an expectation was not reasonable on the facts before me. Defendant was in New York only to conduct an illegitimate business which was necessarily conducted clandestinely. The evidence showed defendant’s gambling operation was run in the back rooms of a candystore and a bookstore, often behind locked doors and the protection of an electronic buzzer system. Moreover, for a short time at the end of the period in question, defendant adopted an alias and grew a beard. Support for the distinction between an “open” versus a “surreptitious” presence in New York comes from the wording of the old tolling provision which read in pertinent part: “Only the time during which the defendant is an inhabitant of or usually or publicly a resident within the state or usually or publicly in personal attendance upon business or employment within the state shall be computed” (Code Crim Pro § 143, as amended by L 1929, ch 246, § 2; emphasis added). This provision was subsumed in CPL 30.10 (4) (a) (i), which was certainly not meant to protect a defendant present in New York only to conduct secretive and illegitimate “business.” At any rate, provision for “continuous” absence was apparently meant only to make certain that vacations or other brief excursions from New York would not toll the statute. (See, People v Guariglia, supra; Waxner, New York Criminal Practice § 15.19 [1977].)
Again, the underlying reason that regular presence in New York by nonresidents does not toll the statute is the natural *724 assumption that such people are readily available to the authorities. Such reasoning does not apply to a defendant on facts such as those before me; it is unreasonable to expect that the defendant could have been apprehended. Accordingly, defendant failed to rebut the presumption of continuous absence by a preponderance of the credible evidence.
For these reasons it was the finding of this court that defendant was “continuously outside this state” within the meaning of CPL 30.10 (4) (a) (i). The court therefore found it unnecessary to reach the issue as to whether the whereabouts of defendant were continuously unknown and continuously unascertainable by the exercise of reasonable diligence.
Accordingly, the motion to dismiss the bail jumping indictment was denied.